1

```
 1                    IN THE UNITED STATES DISTRICT COURT
 2                      FOR THE DISTRICT OF NEBRASKA
 3
 4       _____
 5       UNITED STATES OF AMERICA,        )      4:04CR3051
 6                                        )      October 4, 2004
 7                          Plaintiff,    )      3:08 p.m.
 8                                        )      Lincoln, Nebraska
 9       vs.                              )
10                                        )
11       MICHAEL JOHN BLESSING,           )
12                                        )
13                          Defendant.    )
14       _____)
15
16
17                      TRANSCRIPT OF PLEA HEARING
18               BEFORE THE HONORABLE DAVID L. PIESTER,
19                  UNITED STATES MAGISTRATE JUDGE
20
21
22                      A-P-P-E-A-R-A-N-C-E-S:
23
24       FOR THE PLAINTIFF:          MR. DAVID W. STEMPSON
25                                   Assistant U.S. Attorney
26                                   100 Centennial Mall North
27                                   Suite 487, Federal Building
28                                   Lincoln, NE  68508-3865
29
30       FOR THE DEFENDANT:          MR. THOMAS R. LAMB
31                                   Attorney at Law
32                                   1630 K Street
33                                   Lincoln, NE  68508
34
35       TRANSCRIBER:                WENDY C. CUTTING
36                                   General Reporting Service
37                                   304 South 13th Street
38                                   Lincoln, NE  68508
39
40                                   - - -
41
42       Proceedings recorded by electronic sound recording, transcript
43       produced by transcription service.
44
45
46
```

```
 1                    (Monday, October 4, 2004, at 3:08 p.m.)

 2                    THE COURT:  Mr. Stempson.

 3                    MR. STEMPSON:  Thank you, Your Honor.  David Stempson

 4            for the Government.  This is the matter of United States of

 5            America v. Michael John Blessing, appears at 4:04CR3051.  Comes

 6            on today for a change in plea, Your Honor.

 7                    THE COURT:  Mr. Lamb, is that correct?

 8                    MR. LAMB:  That's correct, Your Honor.

 9                    THE COURT:  All right.  Mr. Blessing, let me remind

10            you that you have the right to proceed in this kind of a

11            hearing, the taking of a guilty plea, before a United States

12            District Judge.  You may also waive that right and consent to

13            proceed before me, a United States Magistrate Judge.  I've been

14            told that you wish to proceed before me, is that correct?

15                    THE DEFENDANT:  Yes.

16                    THE COURT:  Has anyone threatened you with harm or

17            promised you anything in order to get you to consent to proceed

18            before me?

19                    THE DEFENDANT:  No.

20                    THE COURT:  Do you do so freely and voluntarily?

21                    THE DEFENDANT:  Yes.

22                    THE COURT:  All right, I'll accept the consent.

23            Mr. Stempson, go ahead with the rearraignment.

24                    MR. STEMPSON:  Mr. Blessing, an indictment has been

25            returned against you which alleges that between on or about
```

```
1        November 1st, 2000, and on or about September 30th, 2003, in

2        the District of Nebraska, you did knowingly and intentionally

3        combine and conspire to unlawfully distribute and possess with

4        intent to distribute 500 grams or more of a mixture or

5        substance containing a detectable amount of methamphetamine, a

6        Schedule II controlled substance.  This charges you with

7        conspiracy to distribute methamphetamine.  The possible maximum

8        penalty is ten years to life, $4 million fine, five years of

9        supervised release and a $100 special assessment.  Do you

10       understand what you're charged with and possible penalty?

11                       THE DEFENDANT:  Yes.

12                       MR. STEMPSON:  And how do you plead?

13                       THE DEFENDANT:  Guilty.

14                       THE COURT:  Sir, before the Court can accept your

15       guilty plea, we have to make sure that it is knowing and

16       intelligent, that is that you know what you're doing and the

17       rights you're giving up and the consequences, also that it's

18       voluntary, and also that there is a factual basis for the plea.

19       The way we do that is to place you under oath and ask you many

20       of these same questions that are on this Petition to Enter a

21       Plea of Guilty.  So if you'll stand and raise your right hand,

22       I'll have the clerk administer the oath to you.

23                       MICHAEL JOHN BLESSING, DEFENDANT, SWORN

24                       THE COURT:  All right, you may be seated.  Now that

25       you're under oath, you must tell the truth.  If you don't, that
```

1    could be the basis of a federal perjury charge being filed

2    against you.

3                              EXAMINATION

4    BY THE COURT:

5    Q.   Before I go any further, have you had in the last 24 hours

6    any drugs or alcohol?

7    A.   No.

8    Q.   Are you taking any medication?

9    A.   No.

10   Q.   Are you seeing a doctor for anything?

11   A.   No.

12   Q.   Are you feeling okay and thinking clearly?

13   A.   Yes.

14   Q.   All right.  The petition indicates that you signed it back

15   on the 15th of September.  Has there been anything happen in

16   the meantime between then and now that affects your ability or

17   decision to go forward?

18   A.   No.

19   Q.   All right.  When you went through the petition, were you

20   and Mr. Lamb together?

21   A.   Yes.

22   Q.   And did he explain to you the meaning of the questions?

23   A.   Yes.

24   Q.   Did you understand the questions?

25   A.   Yes.

Michael John Blessing, examination                                    5

1      Q.    And are all of your answers true?

2      A.    Yes.

3      Q.    As I said, I'll ask you many of them all over again, so,

4      if at any time in this discussion you have additional questions

5      that come to mind that you want to talk over with Mr. Lamb,

6      simply tell me that.  I'll give you the opportunity to confer.

7            The petition indicates that you are 32.  You've got an

8      11th grade education.  You were treated back in 2003 at

9      Antlers.  Is there anything about that treatment episode that

10     affects your ability to go forward here today?

11     A.    No.

12     Q.    Mr. Lamb has been representing you.  Has he explained to

13     you the law and the procedures that apply in the case?

14     A.    Yes.

15     Q.    Has he investigated the case to your satisfaction?

16     A.    Yes.

17     Q.    Has he answered your questions about the case?

18     A.    Yes.

19     Q.    Is there anything about his representation of you that

20     you're not satisfied with?

21     A.    No.

22     Q.    As you know, you waive a number of constitutional rights

23     when you enter a guilty plea to a felony offense, and I want to

24     go over those with you.  You must know that you have the right

25     to plead not guilty and to require the Government to prove its

Michael John Blessing, examination                                    6

1       case against you in court. Do you understand that?

2       A.   Yes.

3       Q.   If you did that, you would have the right to a speedy and

4       a public trial before a jury of twelve persons selected from

5       your peers.  Do you understand that?

6       A.   Yes.

7       Q.   You'd also have the right to counsel at all stages of the

8       case and if you couldn't afford to hire your own attorney, then

9       one would be appointed to represent you at no cost to you.  Do

10      you understand that?

11      A.   Yes.

12      Q.   You'd also have the right to be present at the trial and

13      to see and hear every one of the witnesses the Government would

14      have testify against you and, through your attorney, to cross-

15      examine them. Do you understand that?

16      A.   Yes.

17      Q.   You'd also have the right to use the subpoena power of the

18      Court to force or compel the attendance and testimony of other

19      persons to be defense witnesses for you, as well as production

20      of other evidence.  Do you understand that?

21      A.   Yes.

22      Q.   You'd also have the right to testify during the trial, or

23      not, as you choose and no one could force you to take the

24      witness stand and testify during the trial.  Do you understand

25      that?

Michael John Blessing, examination                                    7

1      A.   Yes.

2      Q.   And if you chose not to testify at the trial, the jury

3      could not take that silence as evidence of guilt against you.

4      Do you understand that?

5      A.   Yes.

6      Q.   Finally, you have the right to be presumed innocent.  What

7      that means is, you have the right to be found innocent unless

8      and until the Government proves each and every element of the

9      offense it charges you with beyond a reasonable doubt to the

10     unanimous satisfaction of all twelve members of the jury.  Do

11     you understand that?

12     A.   Yes.

13     Q.   Now, if the Court accepts your guilty plea, you'll be

14     found guilty without any trial.  The case will move forward to

15     the sentencing phase, and you will have given up all of those

16     constitutional rights except the right to counsel.  Do you

17     understand that?

18     A.   Yes.

19     Q.   There are, of course, consequences to your guilty plea.

20     Do you realize that unless there is some departure from either

21     the statutory minimum or the sentencing guidelines or both,

22     that you will be going to prison for at least ten years as a

23     result of your plea here today.  Do you understand that?

24     A.   Yes.

25     Q.   And it could be for as long as life imprisonment.  Do you

Michael John Blessing, examination                                      8

1      understand that?

2      A.    Yes.

3      Q.    There could also be a fine of up to $4 million, and after

4      any incarceration, there would be at least five years of

5      supervised release and, of course, there would always be the

6      $100 special assessment.  Do you understand that?

7      A.    Yes.

8      Q.    There are other consequences.  You lose civil rights, the

9      right to vote, hold public office, serve on a jury, and to

10     possess any kind of a firearm.  Do you understand that?

11     A.    Yes.

12     Q.    You could also be ineligible for certain loan or grant

13     programs funded by the Federal Government, as well as from

14     certain professional or commercial licenses.  Do you understand

15     that?

16     A.    Yes.

17     Q.    Are you now on probation or parole?

18     A.    No.

19              THE COURT:  And is there restitution in this case?

20              MR. STEMPSON:  No.

21     BY THE COURT:

22     Q.    Pleading guilty may not get you any benefit in sentence.

23     By that I mean the judge could give you the same sentence

24     whether you plead guilty or you go to trial and are found

25     guilty.  Do you understand that?

Michael John Blessing, examination                                      9

1     A.   Yes.

2     Q.   I'm going to ask you a number of questions, now, that

3     concern sentencing and the sentencing guidelines.  As you're

4     probably aware, the law with respect to the federal sentencing

5     guidelines is not determined as of this time.  The case that

6     will do that is before the Supreme Court of the United States

7     and was argued today.  But I'm going to ask you these questions

8     on the assumption that they will apply to you.  That way we'll

9     have done no harm if they end up not applying.

10          First, you must know that in determining -- Well, first

11    let me go back.  The sentencing guidelines are an attempt by

12    the Congress to equalize sentences across the nation for the

13    same or similar crimes.  On one hand, they evaluate the

14    seriousness of the crime.  On the other hand, they evaluate the

15    seriousness of any criminal history the defendant may have, as

16    well as the defendant's involvement in the crime.  Those things

17    are plotted on a chart or a grid, and in that fashion, there is

18    developed then, a range of sentences and the judge is required

19    to sentence the defendant within that range.  Is that your

20    general understanding?

21    A.   Yes.

22    Q.   Has anybody promised you that your case would be at any

23    particular place on that sentencing guideline chart?

24    A.   No.

25    Q.   All right.  Normally, at this time, it cannot be known

Michael John Blessing, examination                                    10

1      really where someone will come out through this sentencing

2      process, because there are additional findings of fact that

3      have to be made between today and the date of sentencing which

4      can influence that.  So all of your discussions with your

5      lawyer or with anybody else about possible sentences must be

6      considered by you to be only estimates.  Do you understand

7      that?

8      A.   Yes.

9      Q.   In determining what your sentence will be, the judge is

10     required to examine what we call all relevant conduct.  That

11     means he has to consider all of the circumstances surrounding

12     the offense, even if you're pleading guilty to less than all of

13     them.  Do you understand that?

14     A.   Yes.

15     Q.   There are some things, of course, that can increase your

16     sentence under the sentencing guidelines.  For example, if you

17     tell the probation officer, who's preparing the presentence

18     report, something that isn't true, that could increase your

19     sentence.  Likewise, prior convictions in the last 15 years; if

20     you committed this offense less than two years after being

21     released from prison; if you committed this offense while you

22     were on probation, or parole, or supervised release, or escape

23     status; or if you committed this offense as part of a pattern

24     of criminal conduct from which you got a substantial portion of

25     your income; and, since this is a drug case, if you had two

Michael John Blessing, examination                              11

1        prior felony convictions for either crimes of violence or drug

2        trafficking, that could substantially increase you sentence as

3        a career offender.  Do you realize that any or all of those

4        factors, if they should apply to you, would increase your

5        sentence?

6        A.   Yes.

7        Q.   In addition, if you cooperate with the Government and

8        provide to them what they say is substantial assistance, then

9        your sentence could be reduced under the guidelines, as well.

10       Do you understand that?

11       A.   Yes.

12       Q.   Ordinarily, once the sentencing guideline range has been

13       determined, the judge is required to sentence the defendant

14       within that range.  However, as you know, there are some

15       provisions which allow him to depart from that range either

16       downward or upward.  So, as we sit here today, there's no

17       assurance that your sentence will even be within the guideline

18       range.  Do you understand that?

19       A.   Yes.

20       Q.   You must know that if you're sentenced to a period of

21       confinement, you will serve all of that time in prison.  There

22       is no parole in our system, in the federal system.  So your

23       time in custody will be reduced only by whatever good time you

24       may earn, if you earn it, up to 54 days a year.  Do you

25       understand that?

Michael John Blessing, examination                                12

1     A.   Yes.

2     Q.   And then after any period of incarceration, there would be

3     supervised release.  Have you and Mr. Lamb talked about that?

4     A.   Yes.

5     Q.   Essentially, you would no longer be in prison, but you'd

6     be supervised by a probation officer.  You would have to report

7     from time to time, and you would have to abide by certain

8     conditions.  Those conditions can limit where you live or work

9     or travel.  You could be subject to search, subject to drug

10    testing, required to participate in drug treatment or other

11    kinds of counseling, or to abide by other conditions along

12    those lines.  Is that your general understanding of it?

13    A.   Yes.

14    Q.   All right.  You must know that if you violate any of those

15    conditions, that supervised release can be revoked, and you can

16    be required to serve all of that time in prison.  Do you

17    understand that?

18    A.   Yes.

19    Q.   In addition, if you were to do something that was not only

20    a violation of your conditions of supervised release, but also

21    another crime, then, not only could you lose your supervised

22    release on this sentence, but you could also be sentenced more

23    harshly on that crime.  Do you understand that?

24    A.   Yes.

25          THE COURT:  Tell me about the Plea Agreement.

Michael John Blessing, examination                                    13

1              MR. STEMPSON:  Your Honor, again, it's the normal

2      customary plea agreement that this Court has seen on numerous

3      occasions.  It does provide that Mr. Blessing, should he take

4      part in and demonstrate to the Probation Office his acceptance

5      of responsibility, he will get benefit for that.  It also

6      provides for his cooperation which he has begun with a

7      statement on July 15th, 2004.

8          Paragraph 10 does provide that he would be held

9      responsible beyond a reasonable doubt for at least 1.5

10     kilograms but less than 5 kilograms of a mixture of a substance

11     containing a detectible amount of methamphetamine.  A base

12     offense level therefor under the guidelines would be a 34.

13         It also provides in Paragraph 11 that he would provide the

14     Blakely waivers that this Court has talked about and that I

15     believe he has, it's my understanding.

16         Other than that, Your Honor, those are the high points and

17     I think -- of this plea agreement.

18             THE COURT:  Mr. Lamb, do you agree that that

19     describes the main points of the Plea Agreement?

20             MR. LAMB:  Yes, I do, Your Honor.

21                              EXAMINATION

22     BY THE COURT:

23     Q.   Mr. Blessing, is that your understanding of the main

24     points?

25     A.   Yes.

Michael John Blessing, examination                                    14

1       Q.   Have you and Mr. Lamb gone over this Plea Agreement letter
2       paragraph by paragraph?
3       A.   Yes.
4       Q.   Do you have any questions about any of these paragraphs or
5       provisions now?
6       A.   No.
7       Q.   All right.  Tell me, if you will, why you decided to make
8       an agreement with the Government.
9       A.   Just some responsibility -- to accept responsibility for
10      what I've done.
11      Q.   You must know that, as we sit here today, this agreement
12      is simply between you and the Government.  It's not binding on
13      the Court.  Do you understand that?
14      A.   Yes, sir.
15      Q.   I'll recommend to the sentencing judge that he accept the
16      Plea Agreement, but he might not accept it.  And if he does
17      not, you still might not be able to withdraw your guilty plea.
18      Do you understand that?
19      A.   Yes.
20      Q.   You must also know that if you had taken this case to
21      trial, the jury, of course, would be responsible for making all
22      the findings of fact necessary to convict, and also now, any
23      finding of fact that would be required in -- or could result in
24      an increase in your sentence.  And when the jury made those
25      determinations, they would require or hold the Government to

Michael John Blessing, examination                                    15

1     the highest burden of proof we have in our system.  It's called
2     beyond a reasonable doubt.
3          By pleading guilty, you are agreeing that not the jury,
4     but a judge will make those determinations of fact and, when he
5     does it, he will hold the Government to a lower burden of proof
6     called preponderance of the evidence.  Is that your
7     understanding?
8     A.   Yes.
9     Q.   Knowing that, do you still wish to plead guilty?
10    A.   Yes.
11    Q.   All right.  You have signed, also, what we affectionately
12    call the Blakely waiver in which you have agreed that you will
13    not challenge the sentencing guidelines as being
14    unconstitutional.  You'll also give up your right to any jury
15    finding of fact necessary to raise your sentence or increase
16    your sentence.  You're also giving up the right to challenge
17    the grand jury indictment or the procedures that were used in
18    obtaining that indictment against you.  Is that your
19    understanding?
20    A.   Yes.
21    Q.   And, again, were you and Mr. Lamb together when you went
22    through this waiver?
23    A.   Yes.
24    Q.   Did he explain to you the meaning of all these provisions?
25    A.   Yes.

Michael John Blessing, examination                              16

1        Q.    Did you sign it freely and voluntarily?

2        A.    Yes.

3        Q.    Another thing you must know with respect to the

4        cooperation provisions and a possible downward departure motion

5        by the Government.  Neither you, as the defendant, nor the

6        Court can force the Government to file that motion for a

7        downward departure.  Do you understand that?

8        A.    Yes.

9        Q.    And even if they file it, there's no assurance the judge

10       is going to grant it.  Do you understand that?

11       A.    Yes.

12       Q.    And even if he grants it, he may depart less than you

13       hoped or expected.  Do you understand that?

14       A.    Yes.

15       Q.    Now, other than this Plea Agreement, has anybody promised

16       you anything in order to get you to plead guilty?

17       A.    No.

18       Q.    Has anybody threatened you or anyone close to you with any

19       sort of harm in order to get you to plead guilty?

20       A.    No.

21       Q.    Has anybody told you that you'd get a lenient sentence by

22       pleading guilty?

23       A.    No.

24       Q.    Has anybody told you what your sentence what will be?

25       A.    No.

1      Q.    Are you pleading guilty for any reason other than the fact

2      that you are guilty?

3      A.    No.

4             THE COURT:  Tell me about the factual basis.

5             MR. STEMPSON:  Your Honor, the factual basis would be

6      based on cooperating witnesses' testimony as well as telephone

7      tolls.  A Keeton Amos (phonetic), a cooperating witness, will

8      testify that he dealt with Michael Blessing from February of

9      2003 to September 2003, and during that period he sold an

10     estimated amount of methamphetamine of approximately five

11     pounds to Michael Blessing.  Mr. Amos was charging Mr. Blessing

12     $600 per ounce.  He fronted the methamphetamine to Mr.

13     Blessing, and upon Mr. Amos' arrest, Mr. Blessing still owed

14     him $2,000.  That's his testimony.

15     Michael Berner (phonetic), a cooperating witness will

16     testify that he dealt with Mr. Blessing from November of 2002

17     to February 2003, and that he supplied one-eighth ounce to one-

18     quarter ounce quantities of methamphetamine to Mr. Blessing for

19     a total amount of approximately one ounce.  And Mr. Berner

20     would then testify he obtained approximately one ounce from

21     Michael Blessing.

22     Anna Vaughn (phonetic), a cooperating witness, would

23     testify that she dealt with Mr. Blessing from February 2003 to

24     June 2003, that she met Mr. Blessing through Travis Hardesty

25     (phonetic) and during the period of this conspiracy she bought

1          an estimated three to four ounces of methamphetamine from

2          Michael Blessing.

3                Winona Hoshee (phonetic), a cooperating witness, will

4          testify that she dealt with Mr. Blessing from June through July

5          of 2003.  During this period of time, she purchased

6          approximately  one-and-one-quarter ounces from Mr. Blessing.

7                Dustin Jordan (phonetic), a cooperating witness, will

8          testify that he dealt with Mr. Blessing from approximately

9          December 2002 into March of 2003, and during the period of this

10         conspiracy, he obtained approximately eight ounces of -- in his

11         estimation from Michael Blessing.  And these transactions took

12         place at the -- in the area of 53rd and Holdrege in Lincoln.

13              Jennay Burke (phonetic), a cooperating witness, will

14         testify that she dealt with Mr. Blessing from December 2002 to

15         February 2003, and that she was obtaining one-half quantities

16         of methamphetamine --

17              THE COURT:  One-half what?

18              MR. STEMPSON:  One-half-ounce quantities of

19        methamphetamine and one-ounce quantities in which she obtained

20        approximately ten ounces of methamphetamine from Mr. Blessing.

21        Telephone tolls will indicate that from April 1st, 2003, to

22        April 29th, 2003, Winona Hoshee received approximately 16

23        telephone calls from Michael Blessing and she also called him

24        approximately 44 times.  Cell telephone tolls will show that

25        Keeton Amos from July 1st, 2003, to September 4th, 2003, a

1    phone number subscribed to by Michael Blessing was called 163

2    times by Mr. Amos.

3         Therefore, it's the Government's position that there was

4    approximately 1.5 but less than 5 kilograms of methamphetamine

5    involved in this conspiracy from the dates alleged, all in the

6    District of Nebraska.

7              THE COURT:  Mr. Lamb, do you agree that if this case

8    were to go to trial, that information would be presented to the

9    jury?

10             MR. LAMB:  Yes, I do, Your Honor.

11   BY THE COURT:

12   Q.   Mr. Blessing, do you agree?

13   A.   Yes.

14   Q.   Is that information true?

15   A.   I don't agree to all the weight.

16   Q.   All right.  Well, let's start this way.  Why don't you

17   just tell me what you did that makes you guilty.

18   A.   I sold methamphetamine.

19   Q.   And was that in Lincoln Nebraska?

20   A.   Yes.

21   Q.   And was it between November 1st, 2000, and September 30th,

22   2003, or at times between those dates?

23   A.   Yes.

24   Q.   I take it you knew that what you were dealing with was

25   meth?

Michael John Blessing, Examination                                      20

1        A.   Yes.

2        Q.   You knew that was illegal?

3        A.   Yes.

4        Q.   And that was in accordance with some arrangement that you

5        had at least with some of these other people, is that right?

6        A.   Yes.

7        Q.   Okay.  Now, how much do you think you're responsible for

8        if it's -- Well, let me ask you -- I'll ask it to you this way.

9        Are you responsible for at least one-and-a-half kilograms, but

10       less than five kilograms of a substance containing

11       methamphetamine?

12       A.   Yes.

13       Q.   All right.  Regardless of what the truth may be with the

14       amounts that they're testifying to, you are definitely

15       responsible for that much, anyway?

16       A.   Yes.

17       Q.   Okay.  Yeah, under the circumstances they could get on the

18       witness stand and testify to those amounts during the trial and

19       the jury would be free to believe them or not.  But at least

20       that information would be before the jury.  You agree to that,

21       don't you?

22       A.   Yes.

23       Q.   I think we've gone over most of the questions in the

24       petition.  Has this discussion raised other questions that you

25       have that you want to talk over with Mr. Lamb before proceeding

Michael John Blessing, Examination                                    21

1          further?

2          A.    No.

3          Q.    Do you still want to plead guilty?

4          A.    Yes.

5          Q.    Are you guilty?

6          A.    Yeah.

7                    THE COURT:  Mr. Stempson, are there additional

8          questions that I should ask the defendant?

9                    MR. STEMPSON:  No, Your Honor.

10                   THE COURT:  Mr. Lamb, do you have any?

11                   MR. LAMB:  No, I don't, Your Honor.

12                   THE COURT:  Mr. Stempson, are you satisfied that the

13         plea is knowing and intelligent, that it's voluntarily entered

14         and that there's a factual basis for it?

15                   MR. STEMPSON:  I am.

16                   THE COURT:  Mr. Lamb, are you?

17                   MR. LAMB:  Yes, Your Honor.

18                   THE COURT:  Mr. Blessing, once more, for the record.

19         How do you plead?

20                   THE DEFENDANT:  Guilty.

21                   THE COURT:  I find that the entry of the guilty plea

22         is knowing and intelligent, that it's voluntarily entered, and

23         that there's a factual basis for it.  I, therefore, am signing

24         a report and recommendation that the plea and the Plea

25         Agreement be accepted.  Either side or both sides can object to

1       that within ten days.  On the assumption that it will be

2       accepted, I sign now the order establishing the sentencing

3       schedule and, among other things, that sets the sentencing at

4       January 6th, 2005, at 1:00 in the afternoon.  That is before

5       Judge Kopf.

6           Is there anything else that we should address in the case

7       at this time?

8                   MR. STEMPSON:  No, Your Honor.

9                   MR. LAMB:  Nothing else, Your Honor.

10                  THE COURT:  All right, Mr. Blessing, on behalf of the

11      Court, I do want to acknowledge what you've done.  Not only

12      have you put yourself in a position to at least, perhaps get a

13      better sentence, but you've also saved yourself a good deal of

14      grief going through a trial.  You also saved the Government the

15      time and money it takes to bring in its witnesses to prove the

16      case and you've saved the taxpayers the money it takes to bring

17      a jury in to hear the case and decide it.  So whatever else may

18      happen, I do commend you for that decision, and I wish you

19      well.

20                  THE DEFENDANT:  Thank you.

21                  THE COURT:  We'll be in recess.

22                      (Recessed at 3:33 p.m.)

23                              - - -

24

25

23

1                          C E R T I F I C A T E

2               I, Wendy C. Cutting, court-approved transcriber,

3       certify that the foregoing is an accurate transcript from the

4       official electronic sound recording provided to me of the

5       proceedings made in the above-entitled matter.

6            s/Wendy C. Cutting            DATE:     October 22, 2004

7       Signature of Approved Transcriber

8                                    - - -